**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Adam Wright,<br><br>       Plaintiff,<br><br>   v.<br><br>TaxSlayer LLC,<br><br>       Defendant. | Civil Action No.: 1:23-cv-05481<br><br>**FIRST AMENDED**<br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Adam Wright ("Plaintiff"), by and through undersigned counsel, hereby submits the following Complaint and Demand for Jury Trial against TaxSlayer LLC (hereinafter, "TaxSlayer" or "Defendant") and alleges the following upon information and belief:

## NATURE OF THE ACTION

1. This action against Defendant seeks damages for actual and imminent or impending injuries as a result of Defendant's unlawful disclosure of Plaintiff's private tax return information. The confidential, private tax return information that was unlawfully disclosed, disseminated, transmitted, and/or released by TaxSlayer to third parties without the consent of Plaintiff included, but was not limited to, the following information: Plaintiff's full name; phone number; names of dependents; and which pages/forms the consumer used on TaxSlayer's website. This confidential tax return information ("TRI"), along with other personal identifiers, was unlawfully disclosed, disseminated, transmitted, and/or released by TaxSlayer to unauthorized third-party advertising platforms.

1

2.      In or around 2022, TaxSlayer, along with other major tax preparation software companies, was the subject of an investigation by The Markup, which revealed that TaxSlayer had been unlawfully utilizing pixels to disclose, disseminate, transmit, and/or release confidential TRI to major tech companies, including Meta and Google.

3.      Subsequently, TaxSlayer, along with other major tax preparation software companies, was the subject of a congressional investigation regarding the unlawful disclosure, dissemination, transmission, and/or release of customer TRI data to major tech companies, including Meta and Google.

4.      TaxSlayer is, and at all relevant times was, one of the largest tax preparation companies in the United States.

5.      Founded in 1965, TaxSlayer is utilized by millions of taxpaying Americans to prepare and file their tax returns.

6.      TaxSlayer maintained and operated, and continues to maintain and operate a website, https://www.taxslayer.com. Through this website, taxpaying customers – among other things – can utilize TaxSlayer's tax preparation software to prepare and file federal and state taxes.

7.      In order to utilize TaxSlayer's tax preparation software, taxpaying customers are required to share sensitive, personal, and confidential TRI with TaxSlayer.

8.      These taxpaying customers have an expectation of privacy, including that TaxSlayer will maintain their TRI in a safe and secure manner.

9.      Online tax preparation software systems are the predominant way through which Americans file their taxes.

10.      Millions of Americans use TaxSlayer to file their taxes each year, entrusting TaxSlayer with personal, private TRI. Such TRI includes social security numbers and additional, detailed information required by the IRS and New York Tax Board for filing their taxes.

11.     Until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted, via TaxSlayer, to Meta Platforms, Inc. ("Meta") and Google, both of which were unauthorized third parties. The transmission was effectuated using Meta Pixel, a line of code inserted into the online tax preparation software, or Google Analytics. Such unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff.

12.     TaxSlayer first implemented the Meta Pixel in or around February 2018.

13.     TaxSlayer used the Meta Pixel on its website. The Meta Pixel gathered Plaintiff's TRI and unlawfully disclosed, disseminated, transmitted, and/or released it to major tech companies, including Meta and Google.

14.     TaxSlayer also had Google Analytics installed on its website at least as early as March 2011.

15.     Upon information and belief, TaxSlayer unlawfully disclosed, disseminated, transmitted and/or released Plaintiff's confidential TRI to third party companies including Google and Meta, from the time Google Analytics and Meta Pixel were installed on TaxSlayer's platforms through November 2022, when they were contacted by The Markup.

16.     Upon information and belief, TaxSlayer did not attempt to forestall or prevent the disclosure, dissemination, transmission, and/or release of Plaintiff's TRI until after they were approached by The Markup in November 2022. Failure to take action before being contacted demonstrates a reckless disregard for Plaintiff's TRI.

17.     Upon information and belief, TaxSlayer violated its own privacy policy and disclosure agreements by unlawfully transmitting Plaintiff's TRI to unauthorized third parties, including, but not limited to Meta and Google, without notice to Plaintiff or obtaining Plaintiff's consent.

18.     Upon information and belief, TaxSlayer also permitted third parties that received

Plaintiff's TRI to utilize and profit from the unlawfully received information.

19.     TaxSlayer has disclosed, disseminated, transmitted, and/or released to and helped third parties obtain Plaintiff's TRI.

20.     Plaintiff seeks to remedy these injuries, prevent their future occurrence, and, accordingly, asserts the below claims and seeks monetary damages, injunctive relief, declaratory relief, and all other available relief by law or in equity.

## THE PARTIES

### PARTY PLAINTIFF

21.     At all relevant times and currently, Plaintiff has been a United States citizen, residing and domiciled in Kings County, New York and thus is a citizen of the State of New York.

22.     Plaintiff is a customer of TaxSlayer and used TaxSlayer's website to prepare and file his federal and state income taxes for the 2020 tax year.

### PARTY DEFENDANT

23.     Defendant TaxSlayer LLC is a Georgia limited liability company with its principal place of business located at 945 Broad Street Augusta, GA 30901.

24.     TaxSlayer advertises and provides online tax preparation services to persons throughout the United States, including the State of New York.

25.     Upon information and belief, TaxSlayer owns and controls the website https://www.taxslayer.com, where customers can utilize its tax preparation technology to prepare and file state and/or federal income tax returns.

### JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy

exceeds $75,000.00, exclusive of interests and costs.

27.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

28.     This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this state. Defendant offers and markets its services to Plaintiff, a resident of New York, and permits Plaintiff to prepare and file New York state tax returns.

29.     Furthermore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events giving rise Plaintiff's claims occurred in this District; a substantial part of property that is subject to Plaintiff's claims is situated in this District; and because Defendant transacts substantial business generally in this District.

## FACTUAL ALLEGATIONS

**A.      TaxSlayer is a Tax Return Preparer Under the Law.**

30.     Treasury Regulation, 26 C.F.R. § 301.7216-1 – Penalty for disclosure or use of TRI – broadly defines "[t]ax return preparer" [at (b)(2)] as "[a]ny person who is engaged in the business of preparing or assisting in preparing tax returns," including "[a]ny person who is engaged in the business of providing auxiliary services in connection with the preparation of tax returns, including a person who develops software that is used to prepare or file a tax return and any Authorized IRS e-file Provider…" Accordingly, TaxSlayer is a "tax return preparer" under this regulation.

31.     At all relevant times, TaxSlayer provided tax preparation services as a tax return

preparer under the law.

32.     At all relevant times, TaxSlayer maintained and operated online tax preparation software through https://www.taxslayer.com and mobile platforms for the purpose of electronic tax filing. Plaintiff utilized TaxSlayer's online tax preparation software to prepare and file federal and state income tax returns.

33.     At all relevant times, in order to utilize TaxSlayer's online tax preparation services, Plaintiff was required to first sign up for an account on TaxSlayer's website. To create an account, Plaintiff had to check a box that confirmed his agreement to TaxSlayer's License Agreement,  Privacy Policy, and Terms of Service.

34.     In short, in order to utilize TaxSlayer's tax preparation software for the purpose of preparing and filing federal and state income tax returns, Plaintiff was forced to disclose confidential TRI to TaxSlayer – confidential TRI over which Plaintiff had an expectation of privacy.

35.     TaxSlayer was also subject to substantially similar New York State laws, including Section 32(14) of the New York Consolidated Laws. See Count II, infra. TaxSlayer is a tax return preparer under New York State law.

**B.     TaxSlayer Was Subject to And Violated Federal and State Statutes.**

36.     Pursuant to 26 C.F.R. § 301.7216-1(b)(3) term "tax return information" means "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." This includes information that "the taxpayer would not have furnished … to the tax return preparer but for the intention to engage … the tax return preparer to prepare the tax return." 26 C.F.R. § 301.7216-1(b)(3)(D). As such, any information a taxpayer provides to a tax preparation company like TaxSlayer is considered TRI.

6

37.     "Use" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(4), to include "any circumstance in which a tax return prepare refers to, or relies upon, TRI as the basis to take or permit an action."

38.     "Disclosure" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(5), as "the act of making TRI known to any person in any manner whatever."

39.     Given the broad definitions set forth in 26 C.F.R. § 301.7216-1 et seq. – intended to provide the taxpayer maximum protection – TaxSlayer's disclosure, dissemination, transmission, and/or release of Plaintiff's TRI to major tech corporations constitutes a disclosure under the regulations. Likewise, the use of such information by Meta and Google – among possible others – constitutes a use of TRI.

40.     TaxSlayer was also subject to substantially similar New York State laws, including 20 CRR-NY 2600-5.1(L) of the New York Consolidated Laws. See Count II, infra. TaxSlayer violated same.

**C.      TaxSlayer Violated its Own Privacy Policy and Secretly Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's Confidential TRI to Third Parties Without Obtaining Plaintiff's Consent.**

41.     TaxSlayer did not obtain valid consent for its disclosure of Plaintiff's confidential TRI data to Meta and Google. To utilize TaxSlayer's online services, Plaintiff must agree to its License Agreement, Privacy Policy, and Terms of Service.

42.     According to the congressional investigation, TaxSlayer did not make updates to its Privacy Policy until after The Markup report was released. TaxSlayer's 2022 Privacy Policy now includes terms that say the company may disclose taxpayer information to service providers and states that cookies, tags, or similar technologies are utilized by TaxSlayer and its partners.

43.     TaxSlayer's Privacy Policy states that it uses the information collected from customers to develop, improve, enhance, and secure its websites, products, and services. It further

states that the technologies are used in administering the websites and application, analyzing trends, evaluating functionality of its websites and applications, tracking users' movements around the site to gather demographic information about its' user base as a whole and that TaxSlayer may receive reports and send push notifications.

44.     At all relevant times, TaxSlayer's privacy policy would not indicate to Plaintiff that his data, particularly confidential TRI, would be disclosed, disseminated, transmitted, and/or released to unauthorized third parties.

45.     At all relevant times, TaxSlayer's policy included language about what information was collected from Plaintiff, including language which expressed, in relevant part, that it does  not link the information it stores within the analytics software to any personally identifiable information submitted on the site or mobile app. Such a representation does not adequately or appropriately express the scope of TaxSlayer's use of Plaintiff's TRI.

46.     TaxSlayer's Privacy Policy, at one relevant point, stated that the "privacy and security of your information is important to us. We do not sell or rent your information. As indicated below, we may share your information to support the products and services you request, or provide your information to third parties, upon your specific consent, for products and services that may benefit you." TaxSlayer's vague and ambiguous policy, including language like this, gave no indication to Plaintiff that his confidential TRI would be shared with unauthorized third parties. In fact, it suggests just the opposite.

47.     TaxSlayer did not obtain specific consent from Plaintiff to share his TRI with major tech companies like Meta and Google and, upon information and belief, Plaintiff never consented to the same.

48.     Though the congressional investigation indicated that TaxSlayer's newly updated privacy policy is more extensive, it still concluded – and Plaintiff here  alleges  –  that  TaxSlayer's

Privacy Policy did not, at all relevant times, meet IRS regulatory requirements.

49.     TaxSlayer's policy did not, at all relevant times, adequately describe the of Plaintiff's TRI that were authorized, nor did it specify what TRI was gathered and disclosed.

50.     At all relevant times, TaxSlayer's consent agreements did not adequately describe the particular use authorized. As such, TaxSlayer's forced agreements failed to meet IRS regulatory requirements and, at all relevant times, TaxSlayer failed to obtain Plaintiff's valid consent prior to disclosing TRI to Meta and Google.

51.     Plaintiff could not possibly know or expect that such disclosures of his highly confidential and personal TRI might occur.

52.     TaxSlayer was not authorized to disclose TRI without consent from Plaintiff. Treasury regulation 26 C.F.R. § 301.7216-2 – Permissible disclosures or uses without consent of the taxpayer – describes specific instances when a tax return preparer, such as TaxSlayer, is permitted to disclose TRI absent taxpayer consent.

53.     Pursuant to 26 C.F.R. § 301.7216-2(d), a tax return preparer may share TRI to another tax return preparer or an auxiliary service provider. Neither Meta nor Google qualify as tax return preparers. Likewise, neither Meta nor Google qualify as an auxiliary service provider. As such, TaxSlayer was not permitted to disclose, disseminate, transmit, and/or release Plaintiff's TRI to third party companies, including Meta and Google, without consent.

54.     The TRI TaxSlayer disclosed, disseminated, transmitted, and/or released to third parties, including Meta and Google, was not truly anonymous, as these companies had the ability to – at minimum – indirectly associate the information with Plaintiff.

55.     TaxSlayer also admitted during the congressional investigation that amounts of adjusted gross income (AGI) and refunds were disclosed, disseminated, transmitted, and/or released to Meta and Google. Such disclosure, dissemination, transmission, and/or release is

unlawful without specific taxpayer consent, which TaxSlayer did not obtain.

**D.      TaxSlayer Unlawfully Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's Confidential TRI to Third Parties, Including Meta and Google, Using Pixels.**

56.     TaxSlayer implemented the Meta Pixel on its website on or around February 2018.

57.     TaxSlayer implemented Google Analytics on its website on or around March 2011.

58.     Upon information and belief, TaxSlayer has implemented or still implements other pixels on its website. According to the congressional investigation, these pixels were utilized by TaxSlayer even after learning that Meta Pixel had attempted to collect sensitive taxpayer information and included Cloudflare, Commission Junction LLC, Episerver, Heap, InfoTrust LLC, Innovid, Medallia, Microsoft, Verizon, and YouTube.

59.     Through the use of pixels, TaxSlayer disclosed, disseminated, transmitted, and/or released Plaintiff's confidential TRI to unauthorized third parties, including Meta and Google.

60.     This information included Plaintiff's name, phone number, names of dependents, and which pages and/or forms Plaintiff used while navigating TaxSlayer's website in order to prepare and/or file his taxes.

61.     Other information gathered by pixels on TaxSlayer's website may have included Plaintiff's email, city, state, and zip codes.

62.     Disclosure of such information, including what pages and/or forms were utilized by Plaintiff, means that sensitive TRI related to Plaintiff's types of income (rental income, capital gains, alimony, credits/deductions, etc.) were disclosed, disseminated, transmitted, and/or released.

63.     At all relevant times and until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted to Meta and Google, both of which were unauthorized third parties. The transmission was effectuated using pixels, including Meta Pixel and/or Google Analytics. Such

unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff.

64.    Any suggestion by TaxSlayer that it was unaware of Meta Pixel's capabilities in terms of disclosing, disseminating, transmitting, and/or releasing data are without merit, since Meta clearly describes a feature called Automatic Configuration within online guides and includes instructions regarding how to inactivate the feature.

65.    Pixels are a computer code that enables the user to send personal information to the company, e.g., Meta or Google. In this case, the personal information included Plaintiff's TRI.

66.    Meta Pixel and Google Analytics are a line or lines of code that were inserted into the online tax preparation software. Upon information and belief, these pixels were utilized by TaxSlayer.

67.    Meta and Google pixels, once placed on a website, download additional code from Meta and Google, which enables the disclosure, dissemination, transmission, and/or release of information – in this case, Plaintiff's TRI. It allows companies like Meta and Google to understand user behavior and tailor advertising efforts.

68.    Companies, like Meta and Google, use this data to, among other things, target ads and train their own artificial intelligence algorithms.

69.    The Meta Pixel came out in 2015.

70.    The Meta Pixel is given to companies to install, along with instructions. Meta Pixel utilizes cookies - specifically c_user cookies – which are unique to each user and allow for identification of users' platforms. Once Meta Pixel is installed on a website, collection of user information and disclosure, dissemination, transmission, and/or release of that information to

Meta begins.

71.     Meta Pixel enables Meta to receive real-time logs of users' actions on third-party websites, like TaxSlayer. The information collected can be, and is, attributed to individual users.

72.     Meta provides marketing partners with insight into user activity, allowing them the ability to track visitor actions, define audiences, and create "lookalike" audiences to tailor advertisements.

73.     Google's pixel, part of its Google Analytics product, is similar to the Meta Pixel. It is a code that the customer, like TaxSlayer, installs on its website. Customers can allow Google to use data for Google's own purposes.

74.     Meta and Google utilize information obtained through its pixels – such as Plaintiff's TRI obtained from TaxSlayer – for their own purposes.

75.     The information obtained is provided to advertising partners, enabling them to target specific advertisements to certain customers.

76.     Tech companies, like Meta and Google, also utilize this information for its own purposes, optimizing its algorithms.

77.     Tech companies, like Meta and Google, utilize c_user cookies to expand user dossiers.

78.     Upon information and belief TaxSlayer profited from its unlawful and improper sharing of Plaintiff's TRI with companies like Meta and Google.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, CONCEALMENT, AND ESTOPPEL

79.     Each unauthorized transmission of Plaintiff's TRI by Defendant constitutes a separate act that triggers anew the relevant statute of limitations.

80.     Additionally, any applicable statutes of limitation have been tolled by (1) the

delayed discovery doctrine, as Plaintiff did not and could not — through no fault or lack of diligence — reasonably have discovered Defendant's conduct alleged herein until shortly before the filing of this Complaint; and (2) the fraudulent concealment doctrine due to Defendant's knowing, purposeful, and active concealment and denial of all facts alleged herein including but not limited to the incorporation of the tracking pixels and devices and the impermissible sharing of Plaintiff TRI.

81.    Defendant had exclusive knowledge that its website(s) incorporated the Meta Pixel, Google's pixels, and other tracking tools and failed to disclose to website users, including Plaintiff, that by using Defendant's website(s) his Confidential TRI would be disclosed to, released to, or intercepted by Meta and Google.

82.    Under the circumstances, Defendant had a duty to disclose the nature, significance, and consequences of its collection and treatment of Plaintiff's Confidential TRI. In fact, to the present Defendant has not conceded, acknowledged, or otherwise indicated to Plaintiff that they have disclosed or released his confidential TRI to unauthorized third parties. Accordingly, Defendant is estopped from relying upon any statute of limitations.

## CAUSES OF ACTION
## COUNT I

### INVASION OF PRIVACY

83.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84.    TaxSlayer's secret disclosure of Plaintiff's TRI, such as Plaintiff's personal contact information, filing status, refund amounts, and number of dependents – constitutes an intentional intrusion upon Plaintiff's private matters. These private matters were intended to remain private from third parties and Plaintiff had an expectation of same.

85.    Plaintiff had a reasonable expectation of privacy in his Confidential TRI.

Plaintiff did not authorize, consent to, or have any reason to know about TaxSlayer's intrusion into his privacy at the time the intrusion occurred.

86.    TaxSlayer's intrusion into Plaintiff's private affairs, seclusion, and solitude, would be highly offensive to a reasonable person.

87.    Plaintiff expected that the confidential TRI he shared with TaxSlayer, would not be disclosed to an unauthorized third party. Industry standards and social norms inform the understanding that private information, including personal information, financial information, and TRI, is highly protected. Disclosure of such information to third parties requires authorization and consent. The secret disclosure of confidential TRI would be highly offensive to a reasonable person.

88.    Plaintiff has suffered harm as a result of TaxSlayer's actions, including, but not limited to, an invasion of his privacy rights.

89.    Plaintiff is seeking appropriate relief for his injuries, including, but not limited to, monetary damages to compensate him for the harm of his privacy interests and disgorgement of profits made by TaxSlayer as a result of its intrusions into Plaintiff's, private matters.

90.    Plaintiff is entitled to punitive damages resulting from the malicious, willful, and intentional nature of TaxSlayer's actions. These actions were directed at invading Plaintiff's' privacy rights in conscious disregard of those rights. Such damages are deemed necessary to deter TaxSlayer from engaging in similar conduct in the future.

91.    If successful, this action will enforce an important right affecting the public interest and would confer a significant benefit on the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the

recovery of attorneys' fees and costs in prosecuting this action against TaxSlayer under applicable law.

92.     Plaintiff requests relief as further described below.

## COUNT II

### VIOLATION OF NEW YORK CONSOLIDATED LAWS, TAX LAW – TAX § 32 AND 20 CRR-NY 2600-5.1

93.     Plaintiff re-alleges and incorporate by reference every allegation that is set forth in the preceding paragraphs as if fully set forth herein.

94.     20 CRR-NY 2600-5.1(L) provides that a tax return prepare may be sanctioned for:

> Willfully or recklessly disclosing or otherwise using a tax return or tax return information in a manner not authorized by Federal or State law or otherwise disclosing confidential information obtained in the course of a professional engagement unless such disclosure was with the consent of the client, in the course of dealing with tax authority, as required by law, or otherwise permitted under relevant professional standards.

95.     Section 32(14) of the New York Consolidated Laws, Tax Law provides:

> "Tax return preparer" means an individual who prepares a substantial portion of any return for compensation. Employees of a tax return preparer or a commercial tax return preparation business who prepare returns for clients of that preparer or preparation business, as applicable, and partners who prepare returns for clients of a partnership engaged in a commercial tax return preparation business, are all "tax return preparers" for purposes of this section. Excluded from the definition of "tax return preparer" are attorneys, public accountants, enrolled agents, and certified public accountants, and employees of an attorney, public accountant, enrolled agent, certified public accountant, or firm thereof preparing returns under the supervision of such attorneys, public accountants, certified public accountants and enrolled agents or firms thereof. Also excluded are volunteer tax preparers, employees of a business or partners in a partnership whose job responsibilities include preparation of only the business' or partnership's returns, and employees of a tax return preparer or a commercial tax return preparation business who

provides only clerical or other comparable  services.

96.     TaxSlayer is, and at all relevant times has been an "individual who prepares a substantial portion of any return for compensation" within the meaning of § 32(14) of the New York Tax Law.

97.     TaxSlayer, routinely disclosed information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns to, at minimum, Meta and Google without the consent of its clients, without being in the course of dealing with the tax authority, without that disclosure being required by federal or state law, and without being permitted under any other relevant laws or professional standards.

98.     Resulting from TaxSlayer's unlawful conduct alleged herein, Plaintiff has lost money and/or property.  Plaintiff has also suffered injury in fact. Had Plaintiff known of TaxSlayer's unlawful conduct, he would not have paid money to TaxSlayer and used its website to prepare tax returns.

99.     As a direct proximate result of TaxSlayer's conduct, TaxSlayer has received and continues to hold unlawfully obtained property and money. TaxSlayer has also profited from its unlawful acts as alleged herein.

100.     Pursuant to 20 CRR-NY 2600-5.1(L), Plaintiff is seeking restitution and disgorgement of all earnings,  profits, compensation, and benefit obtained by TaxSlayer as a result of the unlawful practices  described herein in violation of 20 CRR-NY 2600-5.1(L).

101.     Plaintiff has taken on the responsibility of enforcing the laws and public policies specified  herein  by bringing this lawsuit. Plaintiff will incur a financial burden in pursing this action in furtherance of the public  interest, and because of this an award of attorneys' fees to Plaintiff is appropriate pursuant to  applicable law.

16

102.    Plaintiff seeks relief as further described below.

## COUNT III

## VIOLATION OF 26 U.S.C. § 7431 AND § 6103

103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

104.    The general rule stated in 26 U.S.C. § 6103(a) provides that, "returns and return information shall be confidential…"

105.    In addition, 26 U.S.C. § 6103(b)(2) provides that, "the term return information means a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments…"

106.    In addition, 26 U.S.C. § 7431(a)(2) provides that, "inspection or disclosure by a person who is not an employee of United States.--If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States…"

107.    TaxSlayer is considered "not an employee of the United States" under 26 U.S.C. § 7431(a)(2).

108.    TaxSlayer, either knowingly or by reason of negligence, disclosed return information about Plaintiff in violation of 26 U.S.C. § 7431(a)(2).

109.    Plaintiff seeks all relevant damages from TaxSlayer's violation of the statute described herein.

110.    Plaintiff seeks relief as further described below.

## COUNT IV

**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA), 18 U.S.C § 2510**

111.    Plaintiff incorporates the foregoing allegations as if fully set forth therein.

112.    The ECPA, 18 U.S.C. § 2510, makes it unlawful for a "person" to "intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

113.    Under 18 U.S.C. § 2510(8), "intercept" is defined as "including any information concerning the substance, purport, or meaning of that communication."

114.    Under 18 U.S.C. § 2510(6), "person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."

115.    Under 18 U.S.C. § 2510(12), "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

116.    Plaintiff's electronic communications with TaxSlayer were electronic communications within the meaning of Under 18 U.S.C. § 2510(12). Plaintiff used TaxSlayer's website and TaxSlayer's tax preparation services to prepare tax returns and thereby communicated confidential personal and financial information with TaxSlayer.

117.    Meta, Google, and TaxSlayer are classified as persons within the meaning of the ECPA because they are corporations.

118.    Under 18 U.S.C. § 2510(4), the Meta Pixel tracker is a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

119.    Under 18 U.S.C. § 2510(4), Google's tracking pixels are each a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

120.    By incorporating the Meta Pixel and Google's tracking pixels into its website and permitting Meta and Google, and any other unauthorized third parties to intercept Plaintiff's confidential personal and financial information, TaxSlayer intercepted or endeavored to intercept Plaintiff's electronic communications and/or produced Meta and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's electronic communications, in violation of the ECPA.

121.    18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under 18 U.S.C. § 2510 for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."* (emphasis added).

122.    Plaintiff never consented to TaxSlayer's interception of, or to TaxSlayer procuring Meta and Google, and other unauthorized third parties to intercept, his electronic communications with TaxSlayer through TaxSlayer's website.

123.    TaxSlayer does not meet the requirements of the "party exception" to the ECPA because the electronic communications intercepted by TaxSlayer, or which TaxSlayer procured Meta and Google, and other unauthorized third parties to intercept, were intercepted as part of TaxSlayer's practice of divulging confidential personal information and financial information to unauthorized third parties in violation of numerous federal and state laws.

124.    As  detailed  above, TaxSlayer  violated 20  CRR-NY  2600-5.1(I), the Official Compilation of Codes, Rules and Regulations of the State of New York, New York Consolidated Laws - Tax Law, and committed a tortious invasion of privacy, when it disclosed Plaintiff's confidential  personal  and  financial information to Meta through the Meta Pixel.

125.    Moreover, as described below, TaxSlayer violated the New York Penal Law §156.05.  TaxSlayer's violations of the New York Penal Law § 156.05 is punishable by fines and/or imprisonment. Additionally, as described below, TaxSlayer committed larceny in violation of  Penal Code section § 155.05.

126.    Based on information and belief, TaxSlayer violated numerous other federal and state  statutes  when  it  intercepted  or  endeavored  to  intercept  Plaintiff's  electronic communications and/or procured Meta  and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's electronic communications.

127.    Accordingly, TaxSlayer violated the ECPA each time the Meta Pixel or Google's tracking pixels incorporated into its website intercepted Plaintiff's electronic communications.

128.     Pursuant to 18 U.S.C. § 2520, Plaintiff has been damaged by the interception and disclosure of his electronic communications in violation  of  the ECPA and are entitled to: (1)  appropriate  equitable  or  declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by TaxSlayer as a result of its violations, or (b) statutory damages  of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys'  fees and other litigation costs reasonably incurred.

129.    Plaintiff seeks  relief as further described below.

## COUNT V

## VIOLATION OF NEW YORK PENAL LAW § 250.00

130.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

131.    The New York Penal Law § 250.05 states, "a person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication. Eavesdropping is a class E felony."

132.    The New York Penal Law § 250.00 (5) electronic communication as, "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system, but does not include: (a) any telephonic or telegraphic communication; or (b) any communication made through a tone only paging device; or (c) any communication made through a tracking device consisting of an electronic or mechanical device which permits the tracking of the movement of a person or object; or (d) any communication that is disseminated by the sender through a method of transmission that is configured so that such communication is readily accessible to the general public."

133.    TaxSlayer is classified as a "person" within the meaning of The New York Penal Law § 250.05.

134.    Plaintiff's communications of Confidential TRI with TaxSlayer on and through TaxSlayer's website were intended to be kept confidential to the parties. Plaintiff w a s using TaxSlayer's secure website. Plaintiff understood TaxSlayer's website to be secure and no indication was given that his personal information and Confidential TRI would be shared with or viewed by any unauthorized third party. The circumstances reasonably indicate that Plaintiff desired his communications with TaxSlayer to be confined to the parties thereto.

135.    Despite not having any authorization from Plaintiff, TaxSlayer aided, agreed with, and/or conspired with Meta and Google to permit them to intercept these communications and to learn the content of those communications while in transit or in the process of being sent or received.

136.    TaxSlayer's conduct, as described above, violated the New York Penal Law § 250.00.

137.    Plaintiff seeks relief as further described below.

## COUNT VI

### VIOLATION OF NEW YORK PENAL LAW § 156.05

138.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

139.    New York Penal Law § 156.05 provides that, "a person is guilty of unauthorized use of a computer when he or she knowingly uses, causes to be used, or access a computer, computer service, or computer network without authorization. Unauthorized use of a computer is a class A misdemeanor." TaxSlayer violated New York Penal Law § 156.05 when it: (i) knew Meta and other third parties, without permission, were accessing Plaintiff's computer, mobile phone, tablet, or other devices in order to wrongfully obtain and use his personal data, including his Confidential TRI, in violation of Plaintiff's reasonable expectations of privacy in his devices and data, in violation of New York Penal Law § 156.05; (ii) helped Meta and other third parties in accessing, taking, copying, and using Plaintiff's personally identifiable information, including their Confidential TRI, in violation of New York Penal Law § 156.05.

140.    TaxSlayer violated New York Penal Law § 156.05 when it incorporated the Meta Pixel and other tracking devices into its website and when it configured the Meta Pixel and other third-party trackers to disclose Plaintiff's Confidential TRI and other personal information to

Meta and other third parties, thereby causing Meta and other third parties to access Plaintiff's computers and devices without permission.

141.    Plaintiff suffered damages and losses as a result of TaxSlayer's conduct. TaxSlayer's practices have deprived Plaintiff of control over his valuable property, the ability to receive compensation for that data, and the ability to withhold their data for sale.

142.    Plaintiff is seeking compensatory damages in accordance with applicable law, in an amount to be proven at trial, and injunctive or other equitable relief.

143.    Plaintiff has also suffered irreparable and incalculable harm and injuries from TaxSlayer's violations. Plaintiff has no adequate remedy at law.

144.    Plaintiff requests further relief as described below.

## COUNT VII

## VIOLATION OF NEW YORK PENAL LAW § 155.05

145.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

146.    New York Penal Law § 155.05(1) provides, "a person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."

147.    New York Penal Law § 155.05(2)(a) provides, "Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed by conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses."

148.    Under New York law, Plaintiff's private data constitutes property that can be the

subject of larceny.

149.    TaxSlayer acted in a manner that is constituted as larceny by taking Plaintiff's Confidential TRI through Advertising Platform pixels and trackers on its website, with the intent to deprive Plaintiff his property.

150.    Plaintiff did not consent to any of TaxSlayer's actions in taking Plaintiff's private data.

151.    Pursuant to New York Penal Law § 155.05, Plaintiff's is entitled to damages, as well as attorneys' fees and costs, for injuries sustained as a result of TaxSlayer's violations of New York Penal Law § 155.05.

152.    Plaintiff requests further relief as described below.

## COUNT VIII

### VIOLATION OF NEW YORK GENERAL BUSINESS LAWS § 349

153.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

154.    The New York General Business Laws § 349(a) provides, "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

155.    TaxSlayer's omissions, practices, and non-disclosures as alleged herein constituted deceptive practices in the conduct of business within the meaning of the New York General Business Laws § 349.

156.    TaxSlayer engaged in unlawful and deceptive business acts or practices as set forth above. This includes violations of New York General Business Laws § 349, New York Penal Law § 155.05, New York Penal Law § 156.05, New York Penal Law § 250.00, The ECPA, 18 U.S.C § 2510, New York Consolidated Laws, Tax Law – TAX § 32, and 20 CRR-NY 2600-5.1.

157.    Plaintiff reserves the right to allege other violations of law that were committed by TaxSlayer that constitute unlawful and deceptive business acts or practices within the meaning of the New York General Business Laws.

158.    Had Plaintiff known that his Confidential TRI would be disclosed or released by TaxSlayer to unauthorized third parties, he would not have shared his personal and financial information with TaxSlayer's website or would not have used TaxSlayer's website. Had Plaintiff known that his Confidential TRI would be disclosed or released by TaxSlayer to unauthorized third parties, he would not have used TaxSlayer's website to complete his tax returns.

159.    Plaintiff suffered injury in fact and lost money or property as a result of TaxSlayer's acts and practices in that a portion of any money Plaintiff paid for TaxSlayer's services went to fulfill TaxSlayer's obligations with respect to the confidentiality and security of Plaintiff's Confidential TRI, and TaxSlayer failed to fulfill those obligations. The loss of money and/or property includes the unauthorized collection of Plaintiff's Private Data, which has value in an amount to be proven at trial. Moreover, Plaintiff has suffered harm in the form of diminution of the value of his Confidential TRI and other private data.

160.    The actions of TaxSlayer resulted in damage to and loss of Plaintiff's property right to control the dissemination and use of his Private Data.

161.    TaxSlayer has taken property from Plaintiff without providing any, or just, compensation to Plaintiff.

162.    TaxSlayer should be required to cease its illegal and/or unfair collection of user data and be required to retrieve and delete all illegally and/or unfairly obtained user data. TaxSlayer reaped unjust profits and revenues in violation of the New York General Business Laws.

163.    Plaintiff suffered injury in fact as a result of TaxSlayer's acts and practices

since he paid more for TaxSlayer's services than he otherwise would have had he known TaxSlayer was disclosing his Confidential TRI to unauthorized third parties in violation of its legal obligations, social norms, and reasonable consumer expectations.

164.    Plaintiff has also suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of: (i) invasion of privacy; (ii) breach of the confidentiality of his Confidential TRI; and/or (iii) deprivation of the value of his Confidential TRI for which there is a well-established national and international market.

165.    Plaintiff also seeks restitution.

166.    Plaintiff lacks an adequate remedy at law because the ongoing harm from TaxSlayer's interception, collection, taking, possession, and use of his Confidential TRI must be addressed by injunctive relief. Due to the ongoing and nature of the harm, the harm cannot be adequately addressed alone by monetary damages.

167.    This action if successful, will enforce an important right affecting the public interest and would confer a significant benefit on the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff. Since this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the recovery of attorneys' fees and costs in prosecuting this action against TaxSlayer pursuant to applicable law.

168.    Plaintiff seeks relief as further described below.

## COUNT IX

### NEGLIGENCE

169.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

170.     Defendant owed a duty to Plaintiff to exercise reasonable care in gathering, possessing, storing, organizing, and maintaining his TRI and preventing it from being provided to unauthorized third parties, including Meta and Google.

171.     Defendant had a common law duty to prevent foreseeable harm to Plaintiff because he was a foreseeable and probable victims of Defendant's improper disclosure of their impermissible sharing o f Plaintiff's confidential TRI with unauthorized third parties, including Meta and Google.

172.     Defendant's duty also arose from their unique position as one of the largest tax preparation service providers in the United States that routinely engages in the collection of highly sensitive personal TRI. A service that requires the utmost trust of users given the nature of the data being provided.

173.     Defendant furthermore held itself out as trusted stewards and custodians of the TRI of its users, and thereby assumed a duty to reasonably protect their TRI.

174.     Defendant breached its duties owed to Plaintiff by impermissibly sharing his TRI with unauthorized third parties without his knowledge or consent.

175.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff his TRI data would not have been compromised.

176.     Plaintiff requests further relief as described below.

## COUNT X

## NEGLIGENCE PER SE

177.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

178.     Defendant violated numerous federal and New York state statutes through its impermissible disclosure of Plaintiff's private TRI data without his consent, as described above.

179.     Defendant's violation of these statutes constitutes negligence per se.

180.     Plaintiff requests further relief as described below

WHEREFORE, Plaintiff demands judgment against Defendant for declaratory relief, injunctive relief, damages, and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for damages to which he is entitled by law, as well as all costs of this action, interest, and attorneys' fees, to the full extent of the law, including:

a.   That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

b.   That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

c.   That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

d.   That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of their unlawful acts, omissions, and practices;

28

e.   That Plaintiff be granted appropriate equitable or declaratory relief;

f.   That the Court award to Plaintiff all costs and disbursements of this action, along with reasonable attorneys' fees, costs, and expenses;

g.   That the Court award pre- and post-judgment interest at the maximum legal rate; and

h.   That the Court grant all such other relief as it deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 18, 2023                    Respectfully Submitted,

PARKER WAICHMAN LLP

/s/ Raymond C. Silverman
Raymond C. Silverman
Jerrold S. Parker
Melanie H. Muhlstock
6 Harbor Park Drive
Port Washington, NY 11050
Phone: (516) 466-6500
Fax: (516) 466-6665
rsilverman@yourlawyer.com
jparker@yourlawyer.com
mmuhlstock@yourlawyer.com